# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CRAIG MELVIN JACKSON,

       Petitioner,                  Case No. 4:14-CV-12321
                                        HON. TERRENCE G. BERG

   v.

CATHLEEN STODDARD,

       Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; A CERTIFICATE OF APPEALABILITY; <u>AND LEAVE TO APPEAL *IN FORMA PAUPERIS*</u>

Craig Melvin Jackson, ("petitioner"), currently confined at the Carson City Correctional Facility in Carson City, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  In his *pro se* application, petitioner challenges his conviction for second-degree murder, Mich. Comp. Laws § 750.317, felon in possession of a firearm ("felon in possession"), Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), Mich. Comp. Laws § 750.227b.

For the reasons stated below, the application for a writ of habeas corpus will

---

[1] When petitioner first filed his petition for habeas relief, he was incarcerated at the Michigan Reformatory in Ionia, Michigan where the Warden is Carmen Palmer. (*See* dkt. 1, p. 1.) At some point prior to September 25, 2015, petitioner transferred to the Carson City Correctional Facility and notified the Court of his new address. (Dkt. 5.) Accordingly, the Court has modified the caption to reflect Cathleen Stoddard, the Warden at the Carson City Correctional Facility where petitioner is currently incarcerated, as the Respondent in this action. The proper respondent to a habeas petition under § 2254 is the warden of the facility where a petitioner is being held. 28 U.S.C. § 2242; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 124 S. Ct. 2711, 2717 (2004).

be **DENIED WITH PREJUDICE.** The Court will also deny petitioner a certificate of appealability and leave to appeal *in forma pauperis*.

## I.  FACTUAL BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

Petitioner sold drugs (cocaine and marijuana), at a drug house with David Scott, and Bennie Favors ("Blonko") located at 3754 Tyler Street, in Detroit Michigan. (Tr. 3/23/2011, pp. 97-98, 149; Tr. 8/24/2011, pp. 17-18).  The drug house had no locks; the front door was barricaded with a board pushed up against the middle of the door and the floor, while the back door had a bar across the door. There was a gun kept at the drug house, but only at night.  Petitioner was responsible for taking it away in the morning and bringing it back each night. (Tr. 3/23/2011, pp. 108-109)  No one else sold drugs at that address, and each "had to be let in" to enter the house. (*Id.* at 99, 104).  Customers were not allowed in and drugs and money were passed out through a hole in the back door. (*Id.* at 102).

On March 11, 2010, petitioner, Scott, and Favors were hanging out at the drug house with Lewis Berry ("Big Al"). (*Id.* at 98, 148).  Scott testified that he got there around one or two in the afternoon, took a nap for a few hours, and then left around five or six. (*Id.* at 104, 118).  At the time Scott left, petitioner was on the love seat in the house, Berry was sitting on the couch, getting ready to fall asleep, and Favors was lying down on the bed in the other room. (*Id.* at 151-152).  Petitioner

had the gun in his waistband. (*Id.* at 153). Berry has narcolepsy, a sleeping disorder where he can suddenly fall into a very deep sleep. (*Id.* at 163). Berry testified that it could take a lot to wake him up from that deep sleep. (*Id.*) Berry testified that he went to sleep around 4:00 p.m., after Scott left, and that he was woken up at around 6:00 p.m. when he heard the sound of a gunshot. (*Id.* at 157-158, 163).

When Berry awoke, he saw petitioner "coming from the back door," and asked what was going on. Petitioner responded by telling him to move on, as he walked over the body of Flavors who was lying on the floor, curled up in a fetal position. (*Id.* at 159). According to Berry, petitioner walked over Flavor's body "like just a bump in the road some [] just ain't really nothing there" and left. (*Id.*) Berry saw that petitioner had a cell phone in his hand and asked petitioner to call 911, but he did not. (*Id.* at 161-162, 172-173). Berry again asked petitioner what was going on and was told by petitioner to move on. (Tr. 3/23/2011, p. 165). When Berry checked Favors, he was dead. (*Id.* at 171).

The Michigan Court of Appeals affirmed petitioner's convictions. *People v. Jackson*, No. 304163, 2013 WL 276054 (Mich. Ct. App. Jan. 24, 2013), *lv.den.* 494 Mich. 870, 832 N.W.2d 211 (2013).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.    Jackson is entitled to a new trial where he was denied the effective assistance of counsel.

II.     Jackson is entitled to a new trial where the trial court
        abused its discretion in granting the addition of a late
        endorsed prosecution witness.

III.    Jackson was denied his right to the effective assistance of
        counsel and is entitled to an evidentiary hearing to
        develop a testimonial record to support his claim.

IV.     The prosecuting attorney denied Jackson a fair trial
        where she abandoned her clear legal duty to protect the
        rights of Jackson, committed plain error, resulting in a
        conviction that is devoid of due process of law.

V.      The prosecutor failed to produce legally sufficient
        evidence to establish that Jackson is the person who shot
        the decedent beyond a reasonable doubt.

VI.     Jackson was denied his constitutional right to a fair trial
        when the prosecution shifted the burden of proof by
        commenting on Jackson's decision not to testify.

VII.    Jackson was denied his right to a fair trial when a biased
        juror was allowed to remain on the jury after she
        informed the court, prosecutor, and trial counsel that she
        could not be fair.

## II. **LEGAL STANDARD**

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
with respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or
        involved an unreasonable application of, clearly

4

established Federal law, as determined by the Supreme
Court of the United States; or

(2)    resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if
the state court arrives at a conclusion opposite to that reached by the Supreme
Court on a question of law or if the state court decides a case differently than the
Supreme Court has on a set of materially indistinguishable facts. *Williams v.
Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a
state court decision unreasonably applies the law of [the Supreme Court] to the
facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the
writ simply because that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal law erroneously or
incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit
precludes federal habeas relief so long as 'fairminded jurists could disagree' on the
correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101
(2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is
required to show that the state court's rejection of his claim "was so lacking in
justification that there was an error well understood and comprehended in existing
law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at

5

103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. ANALYSIS

### A. Claims 1, 3, and 7: Ineffective assistance of counsel and biased juror.

The Court will discuss petitioner's first, third, and seventh claims together because they all allege the ineffective assistance of counsel. The Court will also discuss petitioner's biased-juror claim that he raises as part of his seventh claim.[2]

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable

---

[2] The issues referenced in petitioner's supplemental brief, attached to the habeas petition, will be referred to as Claims 3, 4, 5, 6, and 7.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

"*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F. 3d 372, 379 (6th Cir. 2011) (quoting *Harrington v. Richter*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664).

7

Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Because of this "doubly deferential" standard:

> "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

*Harrington v. Richter*, 131 S. Ct. at 788. "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Id.* at 789.

Petitioner claims that his trial counsel was ineffective for failing to properly question a potentially biased juror during jury selection. One of the most essential responsibilities of a defense attorney is "to protect his client's constitutional right to a fair and impartial jury by using *voir dire* to ferret out jurors who are biased against the defense." *Miller v. Francis,* 269 F.3d 609, 615 (6th Cir. 2001). However, a defense counsel's actions during *voir dire* are presumed to be matters of trial strategy and cannot serve as the basis of an ineffective assistance of counsel claim

unless "counsel's decision is shown to be so ill-chosen that it permeates the entire trial with unfairness[.]" *Id.* at 615-16.

Petitioner's ineffective assistance of counsel claim fails for two reasons. First, trial counsel's failure to further inquire about the nature of the juror's alleged bias could have been a reasonable trial strategy in light of the fact that she indicated several times that she could separate her personal experiences from petitioner's case and would decide his case solely on the evidence. *See Wilson v. Henry,* 185 F.3d 986, 991 (9th Cir. 1999) (trial counsel's failure to focus on his client's criminal history and to discover potential juror prejudice and whether the jurors could follow limiting instructions on the petitioner's criminal history was not ineffective assistance of counsel; all jurors stated they would be fair and follow the law as instructed, and counsel's choice to rely on such a commitment, without emphasizing petitioner's criminal history, merited deference as a tactical decision).

Secondly, petitioner has failed to show that he was prejudiced by counsel's failure to engage in further inquiry on this issue.  To maintain a claim that a biased juror prejudiced him, for purposes of maintaining an ineffective assistance of counsel claim, a habeas petitioner must show that the juror was actually biased against him. *See Hughes v. United States,* 258 F.3d 453, 458 (6th Cir. 2001); *see also Miller v. Francis,* 269 F.3d at 616 (when a claim of ineffective assistance of counsel is founded on a claim that counsel failed to strike a biased juror, the defendant must show that the juror was actually biased against him).

9

Petitioner has offered no evidence that this juror was actually biased towards him.  In the absence of such evidence, petitioner is unable to establish that he was prejudiced by counsel's failure to further question this juror in order to discover if her experience of being robbed would prevent her from being fair by influencing her decision in petitioner's case. *See Riggins v. Butler,* 705 F. Supp. 1205, 1212-13 (E.D. La. 1989) (petitioner was unable to show that he was prejudiced by counsel's failure to ascertain on *voir dire* that the jury foreman was a former law enforcement officer, absent a showing of actual bias on the part of the jury foreman).

The Michigan Court of Appeals rejected petitioner's claim finding that the juror in question believed that she could be fair and impartial, even though she had been robbed in the past.  Unlike some of the other potential jurors, this juror did not indicate that she would convict petitioner before the prosecution presented any evidence.  This juror also said that she disagreed with the statement that petitioner "more likely than not" must be guilty. *Jackson,* No. 304163, 2013 WL 276054, at *1.

Petitioner has failed to show that he was prejudiced by counsel's failure to challenge this juror, in light of the fact that this juror stated that she could be fair and impartial in deciding petitioner's case. *See Baze v. Parker,* 371 F.3d 310, 318-22 (6th Cir. 2004).  Because petitioner has failed to show that this juror had an actual bias towards him, he has failed to show that he was prejudiced by Counsel's

10

decision not to strike this juror.  Likewise, since petitioner failed to show that this juror was biased against him, the trial court did not abuse its discretion by allowing this juror to remain on the jury.

The standard of review on habeas does not permit a court to substitute its view of possible juror bias for the state court's view; a habeas court may only overturn the state court's findings of juror impartiality if those findings were manifestly erroneous. *DeLisle v Rivers*, 161 F.3d 370, 382 (6th Cir. 1998).  This Court cannot find that the state court's findings were manifestly erroneous. Petitioner's claim is meritless.

Petitioner also alleges that he was denied the effective assistance of counsel when trial counsel failed to object to lay testimony given by David Scott. The Michigan Court of Appeals ruled that "Scott's testimony regarding Jackson's behavior after the victim was killed was rationally based on his perceptions of Jackson, thus it was proper." *Jackson,* No. 304163, 2013 WL 276054, at *2.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  Because the Michigan Court of Appeals determined that Scott's statements were properly admitted under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 Fed. App'x. 431, 437-38 (6th Cir. 2008);

11

*Adams v. Smith*, 280 F. Supp.2d 704, 721 (E.D. Mich. 2003). Because the Michigan Court of Appeals determined that Scott's statements were properly admitted, petitioner is unable to establish that he was prejudiced by counsel's failure to object to the admission of this testimony. Petitioner's claim is meritless.

Moreover, petitioner alleges that trial counsel was ineffective for failing to call several witnesses who would have testified to evidence of 1) forced entry at the scene of the crime, 2) that petitioner voluntarily went to the police after the incident, and 3) individuals present after the shooting but before the police arrived, all of which would have challenged Mr. Berry's credibility as well as Mr. Scott's. Petitioner also requests that this Court grant an evidentiary hearing to develop a record in support of his claim.

According to petitioner, trial counsel was aware that several persons had gone over to the house prior to the police, moved the body, and had removed a weapon and narcotics. Although petitioner mentioned the existence of several witnesses that he contends should have been called on his behalf, petitioner failed to attach any affidavits from these witnesses to his brief on appeal or his supplemental brief, and has not provided this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to testify on petitioner's behalf.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,*

12

178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)).

Petitioner has failed to attach any offer of proof or any affidavits sworn by the proposed witnesses.  Petitioner has not offered, either to the Michigan courts or to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been.  In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Petitioner also alleges that trial counsel was ineffective by failing to present an alibi defense. The Michigan Court of Appeals rejected petitioner's claim:

> Assuming arguendo that Jackson's cellular telephone records and the testimony of the storeowner would have placed Jackson outside of the liquor store at 7:06 p.m., the record demonstrates that the liquor store, the gas station, and the home where the incident occurred were all within a short walking distance of each other.  As such, Jackson's alleged alibi places him in the area of the shooting close in time to the shooting. Therefore, Jackson has failed to rebut the presumption that defense counsel's decision not to present such evidence constituted sound trial strategy.

*People v. Jackson*, 2013 WL 276054, at * 3.

Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004) (internal quotation omitted). In *Millender,* the Sixth Circuit held that defense counsel's failure to call a witness who stated that he saw petitioner out of state "the Sunday before" the crime which occurred on a Monday was not ineffective assistance, in light of the fact that evidence of petitioner's movements on the day before the crime were not exculpatory. *Id.*

In a similar vein, evidence of petitioner's whereabouts in the area where the shooting took place would not have been exculpatory. The liquor store, gas station, and home where the shooting took place were all within a short walking distance of each other and placed petitioner in the area of the shooting close in time to the shooting. Counsel was not ineffective by failing to present an alibi defense placing petitioner outside the liquor store at 7:06 p.m. when Berry testified that he woke up as a result of a gunshot around 6:00 p.m. (Tr. 3/23/2011, p. 163). Because there was a window of opportunity for petitioner to have committed this crime, petitioner was not prejudiced by counsel's failure to present an alibi defense. *See e.g. Fargo v. Phillips,* 58 Fed. App'x 603, 607-08 (6th Cir. 2003).

Next, petitioner alleges that during closing argument, the prosecutor vouched for Lewis Berry's testimony without objection from trial counsel. A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or

14

vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (internal citations omitted).  However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.*

The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted); *see also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004).  However, to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner references the following remarks made in closing argument:

> We have Big Al Lewis Berry who tells you that look we were all there the normal habit was is we're locked in the house I saw Mr. Jackson with the gun he was sitting on the multicolored couch it was directly through the hallway to the back door.

15

When we (sic) saw him he was asleep he had the gun in his waistband. I know that gun to be a 40 caliber gun I've seen it multiple times this is a gun that Craig had he leaves for a little while he comes back.

This was the house gun. This is the gun they use to protect their operation. He does not try to add anything to that. He could of easily come in here and said you know what I saw him stand there and shoot him in the head.

He does not tell you that.

(Tr. 3/24/2011, p. 156).

You saw his honest reaction to what he witnessed that day.

(*Id.* at 157).

From that point um he gets on the bus he starts calling people using bums cell phone, calls his mom, calls family members, tells people hey, look, this is what happens, this is what I saw. And he has not wavered.

(*Id.* at 158).

People are asking him things and he honestly answering the best he could. The police come to him and they start asking because he's pointed out or they overhear him which ever it doesn't matter but he starts telling the police the same story he's been saying all along.

(*Id.* at 159).

When viewed in context, the prosecutor's comments were based on the record evidence and not on her personal belief concerning the evidence.  The prosecutor did not assert or imply that she had any special knowledge apart from

16

the record evidence to believe that petitioner was guilty or the prosecution witnesses were testifying truthfully.  Petitioner has thus failed to show that the prosecutor engaged in improper vouching, so as to entitle him to habeas relief. *See Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001).

Petitioner cannot show that counsel was ineffective for failing to object to the prosecutor's alleged misconduct, in light of the fact that the Michigan Court of Appeals found on direct appeal that the remarks and questions were not improper and were merely facts in evidence to which Berry testified truthfully. *See Finkes v. Timmerman-Cooper,* 159 Fed. App'x. 604, 611 (6th Cir. 2005).  Because the prosecutor's comments did not amount to improper vouching, counsel's failure to object to the prosecutor's comments and questions was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

Petitioner is not entitled to habeas relief on his first, third, or seventh claims.

B. **Claim 2: Late endorsement of a witness.**

Petitioner contends in his second claim that his rights were violated when the judge permitted the prosecutor to endorse a witness, Phillip Stewart, on the second day of trial. "A decision regarding the endorsement of a witness generally constitutes a state law matter within the trial court's discretion, and [petitioner] has not presented a legitimate reason for disturbing the trial judge's ruling, which has already been deemed proper under Michigan state law." *Warlick v. Romanowski*, 367 F. App'x 634, 643 (6th Cir. 2010).

The prosecution was unaware that Mr. Stewart had relevant information until trial counsel mentioned Stewart in his opening statement, leading Stewart to volunteer to testify. Trial counsel was provided an opportunity to interview Steward, prior to the trial court granting leave to amend the witness list.

Furthermore, petitioner concedes that Mr. Berry mentioned Mr. Stewart in the investigator's subpoena hearing conducted on March 18, 2010, at page17, which took place within a week of the shooting. (Brief on Appeal, Habeas Brief, p. 20). Petitioner was not prejudiced by the decision to allow the witness to testify because he had ample time to conduct his own investigation prior to trial and had an opportunity to cross-examine Stewart and explain his testimony. *Warlick,* 367 F. App'x at 644. Petitioner's second claim is without merit.

18

C. **Claims 4 and 6: The prosecutorial misconduct claims.**

In his fourth and sixth claims, petitioner alleges prosecutorial misconduct. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner first alleges that the prosecutor presented perjured testimony. Petitioner alleges that the prosecutor knowing presented false testimony when Berry testified that he awoke and saw petitioner come from the area of the back

19

door, step over the decedent, retrieve a cell phone, step back over the decedent and then leave through a back door.  Petitioner submits that Berry provided false testimony because the surveillance camera at the liquor store and cell phone records place him at the liquor store at 7:06 p.m.  Because of this, petitioner claims that it would be impossible to be at the house when the decedent was shot.

Petitioner submits that the facts given by Berry were coached to Berry by the prosecutor.  The Michigan Court of Appeals found that petitioner's alibi "actually places him in the area of the shooting around the time of the shooting and supports Berry's version of events." *Jackson,* No. 304163, 2013 WL 276054 at *4. The Michigan Court of Appeals also found the claim that the prosecutor coached Berry "about what to say on the witness stand, when taken in context, establish that the police and the prosecutor were merely asking Berry to repeat his version of events." *Id.*

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were

false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Petitioner has presented no evidence to this Court to suggest that Mr. Berry testified falsely about these matters. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). Petitioner's fourth claim is without merit.

In his sixth claim, petitioner alleges that the prosecutor shifted the burden of proof and commented on his right to remain silent by arguing in closing argument that she wished that she could tell the jury "to crawl into his mind and tell you what would make him do this but I don't have to prove motive..." (Tr. 3/24/2011, p. 162). The prosecutor then informed the jury that the judge would be providing instructions about inferring state of mind. (*Id.*).

In *Griffin v. California*, 380 U.S. 609 (1965), the United States Supreme Court held that neither the court nor the prosecutor may invite the jury to infer guilt from the defendant's decision not to testify. They may not "solemnize [ ] the silence of the accused into evidence against him," 380 U.S. at 614, or "suggest[ ] to the jury that it may treat the defendant's silence as substantive evidence of guilt." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976)(emphasis added). However, while a

21

prosecutor may not comment on the defendant's failure to testify or produce evidence, the prosecutor may summarize the evidence and comment upon "its quantitative and qualitative significance." *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994)

When a prosecutor's remark or statement indirectly comments on a habeas petitioner's decision not to testify, a federal court in the Sixth Circuit should use four factors to evaluate such a statement: "1) Were the comments 'manifestly intended' to reflect on the accused's silence or of such a character that the jury would 'naturally and necessarily' take them as such; 2) were the remarks isolated or extensive; 3) was the evidence of guilt otherwise overwhelming; 4) what curative instructions were given and when." *Bowling v. Parker,* 344 F.3d 487, 514 (6th Cir. 2003)(quoting *Lent v. Wells*, 861 F.2d 972, 975 (6th Cir. 1988)).  In reviewing indirect comments touching on a defendant's failure to testify, a court should not find a manifest intent to comment on the right to remain silent if some other explanation for the prosecutor's remarks is equally plausible, such as when a comment is a fair response to a claim made by the defendant or his counsel. *See Gall v. Parker,* 231 F.3d 265, 311 (6th Cir. 2000)(internal citations omitted).

The prosecutor in closing argument was merely informing the jury on the elements that needed to be proven to sustain a conviction and clarified that motive was not one of the elements.  The prosecutor then referenced the jury instructions and informed the jury that they would be provided with instructions pertaining to

the elements of the crime.  The prosecutor did not shift the burden of proof by arguing that she did not have to prove motive to sustain a conviction.

The prosecutor's remarks did not amount to an improper reference to petitioner's failure to testify.  In addition, petitioner would not be entitled to habeas relief on this claim, because the prosecutor's remark was neither flagrant or repetitive. *Joseph v. Coyle,* 469 F.3d 441, 474 (6th Cir. 2006).  Petitioner would also not be entitled to habeas relief on this claim, in light of the trial court's instruction to the jury about petitioner's right not to testify. (Tr. 3/24/2011, p. 193). *Id.*

The Court also rejects petitioner's related claim that the prosecutor's comment impermissibly shifted the burden of proof.  The trial court instructed the jury that petitioner was presumed innocent and that the prosecutor had the burden of proving petitioner's guilt beyond a reasonable doubt.  The trial court also gave the jurors the standard jury instruction which defined the concept of reasonable doubt.  (Tr. 3/24/2011, pp. 188-89).   In the present case, the prosecution's argument did not deprive petitioner of a fair trial.  Any possible prejudice which might have resulted from the prosecutor's comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo,* 302 F.3d 598, 603-04 (6th Cir. 2002).  Petitioner's sixth claim is meritless.

### D. **Claim 5: The sufficiency of the evidence claim.**

In his fifth claim, petitioner argues that there was insufficient evidence to establish his identity as the man who shot and killed the victim. It is beyond

question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. A federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding

24

was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

On habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 Fed. App'x. 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 25 Mich.App. 646, 181 N.W.2d 655, 656 (1970)).

In the present case, Berry testified that he heard a gunshot and awoke to find petitioner walking from the back door and then stepping over the decedent without any emotion.  Berry further testified that he asked petitioner to call 911 which petitioner declined to do, prior to walking back over the decedent and leaving the house.  Berry asked petitioner numerous times about the death of the victim at the house and then pursued petitioner to the liquor store, continuing to ask questions about what happened to his best friend, only to be told by petitioner to move on.  The Court notes that "the testimony of a single, uncorroborated

prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis,* 752 F.2d 1142, 1144 (6th Cir. 1985) (internal citations omitted).  The evidence provided by Berry was sufficient to support petitioner's convictions. *See Brown v. Burt,* 65 Fed. App'x. 939, 944 (6th Cir. 2003).

In addition, there was strong circumstantial evidence that linked petitioner to the crime.  Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations omitted).  Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).  The record reflects that petitioner had a weapon in his possession and was one of three individuals in the house before the death.  The house was secured at all times and access was limited to petitioner, Berry, the decedent, and Scott.  Scott left the house prior to Berry falling asleep, leaving petitioner and the victim alone in the house.  The additional circumstantial evidence supports a finding that petitioner was the perpetrator.  Combined with Berry's testimony of petitioner's actions following the death of the victim, the evidence was sufficient to sustain a conviction for second degree murder.

Because there were multiple pieces of evidence, including eyewitness testimony, to establish petitioner's identity as the perpetrator, the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting petitioner's

sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F.3d 908, 919-21 (6th Cir. 2012).  Petitioner's fifth claim is without merit, and the Court will deny the petition for a writ of habeas corpus.

## IV. CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED IN FORMA PAUPERIS

The Court will also deny petitioner a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of

the denial of a federal constitutional right. *See also* Millender *v. Adams,* 187 F.

Supp. 2d 852, 880 (E.D. Mich. 2002).  The Court will also deny petitioner leave to

appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v.

Stovall,* 156 F. Supp. 2d at 798.

### V.  CONCLUSION

Based upon the foregoing, **IT IS ORDERED** that the Petition for a Writ of

Habeas Corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability is

**DENIED** and petitioner is DENIED leave to appeal *in forma pauperis.*

**SO ORDERED**.

> s/Terrence G. Berg
> TERRENCE G. BERG
> UNITED STATES DISTRICT JUDGE

Dated:  June 28, 2016

### Certificate of Service

I hereby certify that this Order was electronically submitted on June 28, 2016,

using the CM/ECF system, which will send notification to each party.

> By:  s/A. Chubb
>      Case Manager

28